Statement of the case.

## CLARA T. COHEA ET AL. *v.* A. J. JOHNSON.

1. DEED. *Designation of grantor. Administrator.*

   A deed shown to have been made by an administrator *de bonis non* with the will annexed is valid, though after the signature of the grantor only the word "administrator" appears, there being no other designation of his official character.

2. RES JUDICATA. *Decree in partition. Effect in another suit.*

   Where land is devised to several, the administrator with the will annexed being one of the tenants in common, a decree in partition proceedings between them, directing a sale for division by a disinterested person rather than the administrator, is not *res judicata* in another proceeding against his right to execute a power under the will to sell part of the land to a third person.

3. ADMINISTRATOR WITH WILL ANNEXED. *Power of sale. Code 1880, § 1984.*

   A purely personal trust reposed in executors *nominatim* cannot be executed by an administrator with the will annexed, but if the will directs the sale of property devised at all events and the power to sell is confided in the executors *virtute officii*, it may be exercised by an administrator with the will annexed. Hutch. Code, 761, § 113; Code 1880, § 1984.

4. SAME. *Power executed virtute officii.*

   The fact that authority is granted to three executors, or any two of them, to execute the will, will not prevent its execution by an administrator with the will annexed if the executors named were empowered to act by virtue of their office merely.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge, by reason of relationship to the plaintiffs, being disqualified, by agreement of the parties, C. M. WILLIAMSON, ESQ., a member of the bar, presided and tried the case without a jury.

A case similar to this, brought by the same plaintiffs claiming under the will of Perry Cohea, was before this court at the April term, 1891. See *Cohea v. Jemison,* 68 Miss., 510. The provisions of the will of Cohea, material to be considered, are there set out. When that case was remanded to

the circuit court the defendant, Elizabeth Jemison, having died, this case, being one of a series of actions of ejectment begun by the appellants under the same claim of title, was tried.

The land in controversy was owned by Perry Cohea, who died in 1848, leaving a considerable estate. He is the common source of title. The three executors named qualified, and, as directed by the will, about 1859 the lands of the testator were subdivided into lots and sold. Among the subdivisions was a lot of twenty-six acres, designated on the map made by the executors as lot number six, commonly called the Colquhoun lot, of which the land in controversy is a part. Said lot six is situated on the east side of the Illinois Central Railroad, and is in the city of Jackson. Other lands of the said Perry Cohea, which were not sold by the executors, lay on the west side of the railroad. Of the three executors, John Stone and D. A. Cohea died, and Samuel Matthews resigned. In 1872 W. B. Jelks was appointed administrator *de bonis non* of the estate, with the will annexed. He was one of three children of a deceased daughter named in Cohea's will, and was entitled, by reason of his heirship, to an undivided one-fifteenth interest in said land that had not been sold. He had possession of the land, and, in 1873, in his own right as heir and devisee, and as administrator with the will annexed, he, with several of the heirs and devisees of Cohea, filed a bill in the chancery court against the other heirs and devisees, styled *Jelks* v. *Boatner*, setting out the history of said lot six and praying the court to order a division of it into small lots, and asking that a sale thereof should be made in order that there might be a distribution of the proceeds of sale. On this bill the court decreed a sale of the land, but appointed S. B. Thomas commissioner, the decree reciting that for the "benefit of all parties the sale should be made by a commissioner of the court as an impartial and disinterested person, rather than W. B. Jelks, the administrator and one of the heirs." After

the entry of that decree nothing further was ever done in the case. The said W. B. Jelks remained in possession of said lot six, and finally disposed of it in small tracts to different parties. The land in controversy was conveyed by him to Elizabeth Jemison September 22, 1883. The deed recites that the conveyance was made in consideration of $100, and is in the form of an ordinary deed made by the grantor individually, except that it is signed "W. B. Jelks, Administrator." The defendant claims under a conveyance from Elizabeth Jemison, made February 9, 1887. The appellants, being all the heirs and devisees of said Perry Cohea, except the said W. B. Jelks, brought this action of ejectment against the defendant, Johnson, as above stated. Plaintiffs sought to recover possession of an undivided fourteen-fifteenths interest in the said lot.

On the trial the above facts were shown, and the heirship of the plaintiffs was put in evidence. The defendant then introduced evidence of the appointment of W. B. Jelks as administrator *de bonis non* with the will annexed. They also relied upon a tax-title acquired after the purchase from Jelks; but, in view of the decision of the court, it is unnecessary to set this out. Among other things, the plaintiffs objected to the introduction of the deed from W. B. Jelks to Elizabeth Jemison upon the ground that it was not in form a deed from the administrator as such, and that it did not recite what estate, if any, he was administrator of, or that it was executed under a decree of court or by any other authority. Jelks obtained no order of court to execute this deed and others which he made as administrator. It was shown that he applied for an order to sell this and other land, and that the court refused to grant it. Judgment was entered in favor of the defendant, the court holding that under the statute W. B. Jelks, as administrator with the will annexed, had the power to sell and convey the land without an order of court. From this judgment the plaintiffs appealed.

*E. E. Baldwin,* for appellant.

1. The will of Cohea expressly authorized his executors, or any two of them, to sell the lands, and " upon such terms and credit as they, in their discretion, shall deem most advisable for the benefit of all concerned in the estate." This was a plain case of a limited power to the three persons, or a majority of them, to execute the will, based entirely upon the confidence reposed in them by the testator. This very will was so interpreted in the case of *Jelks* v. *Barrett,* 52 Miss., 315.

If the will directs a sale without any discretion, the right to sell survives to the administrator. *King* v. *Talbert,* 36 Miss., 367. Otherwise, if discretion is confided to the executors in making the sale, or if they are directed *nominatim* to make it. *Montgomery* v. *Milliken,* 5 S. & M., 151; *Clark* v. *Hornthal,* 47 Miss., 434. This is common sense. It would be disastrous in the extreme if in a case like this any one might get himself appointed administrator with the will annexed, and thereby become empowered to dispose of valuable real estate at private sale without an order of court and without giving bond for the proceeds, and this, too, when the testator had carefully limited the power to the joint discretion of three men named by him or a majority of them.

2. Section 1984, code 1880, has no application, because here a special discretion is vested in the three executors. For the same reason the case of *Sandifer* v. *Grantham,* 62 Miss., 412, is not an authority in support of appellee's contention. That case simply holds that if a will directs unconditionally that the land be sold, the power may be executed by the administrator with the will annexed. But here the testator hedged in the power of sale so that it could not be executed except upon the joint judgment of at least two men named by him.

3. The deed executed by Jelks was invalid, except to convey his one-fifteenth interest in the land. There is nothing about it to show that he executed it as administrator with the will annexed, except the word " administrator " after his name. Besides, this conveyance was made in defiance of the

chancery court, which had refused to grant him authority to sell this very land. This decree was notice to the world that Jelks did not have authority, and that he did not claim to execute any power under the will.

4. The decree in the case of *Jelks* v. *Boatner* is *res judicata.* The court having jurisdiction there, decided that Jelks had no power to execute the will by selling the land. Jelks and all the owners of the land being parties to that suit, it cannot be said that the decree is *res inter alios acta.*

*Calhoon & Green,* for appellee.

This will evinces a design in the testator that the lands should be sold at all events, in order to satisfy the whole intent of the will. 24 Miss., 402; 36 *Ib.*, 358, 367; 47 *Ib.*, 435; 52 *Ib.*, 324; 54 *Ib.*, 526, 533; 62 *Ib.*, 412; 64 *Ib.*, 351; Hutch. Code, 671, § 113; Code 1857, 458, art. 136; Code 1880, § 1984.

Jelks having the power, it is no objection that he sold privately. *Buckingham* v. *Wesson,* 54 Miss., 526.

It is abundantly shown that Jelks must have conveyed the property as the land of the Cohea estate, of which he was administrator. It is no objection to the deed that it does not show by what authority he executed it. 55 Miss., 360; 64 *Ib.*, 277; 65 *Ib.*, 1.

*M. M. McLeod,* on the same side.

It has been the law in Mississippi since 1821 that where land is directed to be sold by a testator, the sale may be made by an administrator with the will annexed, if the executor shall die or fail to execute the trust. Hutch. Code, p. 671; Code 1857, p. 458; Code 1871, § 1194; Code 1880, § 1984.

The evidence brings this case within the provisions of the statute, which has often been construed by this court. The following cases, construing statutes in other states similar to our own, show that the authority to sell was vested in the administrator with the will annexed: 45 Ala., 462; 49 Conn., 399; 32 Cal., 436; 14 N. J. L., 373; 66 Mo., 437; 3 Ired. Eq.,

204; 32 Ohio, 272; 71 Penn., 47; 7 Heis. (Tenn.), 315; 43 N. J. Eq., 116; 92 N. Y., 539; 95 N. C., 131.

It was argued in the court below that, under the grant of power to the executors or any two of them, after the death of two, the power expired, and that the court could not appoint one person to carry out the trust. This proposition is denied. See 2 Ired. Eq., 330; 19 Gratt. (Va.), 584; 9 R. I., 79.

Here the administrator with the will annexed succeeded by virtue of his office to all the unexecuted powers of his predecessors. *Merideth's Estate,* 1 Parsons' Select Cas., 432.

WOODS, J., delivered the opinion of the court.

The deed from Jelks, administrator, was properly admitted in evidence. That Jelks was the administrator with the will annexed of the Cohea estate appears everywhere in the record; that the land in controversy was conveyed by Jelks, administrator, in the particular deed whose introduction in evidence was objected to, as the land of the Cohea estate, appears on the face of the conveyance itself; and that Jelks, administrator, in this conveyance was dealing with the land as administrator of Cohea's estate appears too clear to need discussion.

The contention of appellants' counsel that the question of the power of Jelks, administrator *de bonis non* with the will annexed, to execute the provision of the will of Perry Cohea, deceased, in the sale of the land in suit, is *res adjudicata,* under the decree of the chancery court of Hinds county, in the case of *Jelks et al.* v. *Boatner et al.,* is without merit. That was a decree in a proceeding instituted by some of the heirs of Cohea against other heirs of the same person, and not by Jelks, administrator, at all, as an inspection of the bill in that case plainly shows. The question of the power of Jelks, administrator, is not hinted at in any pleadings or proceedings, nor does the decree undertake to settle this question, which was not then before that court. It is true the decree of the chancery court declares that the sales of the

lands "should be so made by a commissioner of the court as an impartial and disinterested person, rather than by W. B. Jelks, the administrator and one of the heirs;" but even this declaration is uncalled for, since no judgment of the court touching Jelks' impartiality and disinterestedness was anywhere sought by any one. But this unauthorized remark of the court does not touch the question of Jelks' power to sell the lands, under the will of Cohea, as administrator *de bonis non* with the will annexed.

The contention of counsel must have arisen from a misconception of the purpose of the bill in the case of *Jelks et al.* v. *Boatner et al.*, and a misapprehension as to the parties, and the character of the parties, to that litigation. The question before us now, as to the power of Jelks, administrator, to sell the lands of the Cohea estate, under the provisions of the will of Perry Cohea, deceased, and the question as to the desirability of the sale of the lands of that estate in a particular manner for the purpose of distribution among Cohea's heirs, and of the power of the court to decree such sale, are wide asunder as the poles.

These two preliminary contentions disposed of, we come now to consider the power of Jelks, administrator *de bonis non* with the will annexed, to make sale of the lands in controversy.

The testator, among other provisions and directions to be found in his will, directs the executors thereinafter named to pay all his debts, including physician's bill and funeral expenses; the payment to Edward Cohea, a minor son of the testator, by the executors, of the sum of $250 immediately, as an outfit for his departure to, and entrance into, Hanover College, and the maintenance and education of said Edward at said college until he should attain his majority; the payment of a bequest of $600, by the executors, to Julia Kneeland, a niece of testator, as soon as that sum can be spared from the pressing wants of the testator's estate; all the personal property of the testator, other than slaves, is directed

to be sold by the executors on such terms as they shall deem most beneficial for Cohea's heirs; two eighths of land in Copiah county are to be sold and disposed of by the executors upon such terms as they shall deem best for the estate; a certain lot or tract of land, theretofore by verbal agreement contracted to be sold to Caswell Clifton, the executors are directed to convey to said Clifton, in pursuance of that verbal agreement. The fourteenth paragraph of the will then continues: " It is my will that all my remaining lands in Hinds county shall be sold by my executors upon such terms and upon such credit as, in their discretion, shall seem most advisable for the interests of all concerned in my estate. It is my will, and my said executors are directed to lay off said remaining lands into lots of ten, twenty, or thirty acres each, and sell the same upon the most advantageous terms, securing payment thereon in a safe and satisfactory manner." Then the fifteenth paragraph of the will directs the executors, in their discretion, to delay the sale of the lands mentioned in paragraph fourteen until they could make a crop thereon. The payment of an annuity to Maria Frances, a minor child of the testator, is next directed and provided for. The seventeenth paragraph then declares: "After all my just debts and legacies are paid, and charges on my estate provided for, it is my will and desire that all moneys remaining in the hands of my executors, from whatever source arising, shall be equally divided among my said children," etc. And the eighteenth paragraph is in these words: " I do appoint and nominate as the executors of my last will and testament, my son-in-law, J. Stone, my son, David A. Cohea, and my friend, Samuel Matthews, hereby granting to them, or any two of them, full power and authority to execute and carry into effect each and all provisions of this, my last will and testament, according to the t    ntent and meaning thereof."

It is clear that this will do    not confer upon the executors the power to sell the lands if they shall so elect. The terms of sale are confided to the discretion of his executors, but the

sales of the lands themselves are to be made at all events; and these sales are to be delayed only for one season—in order that a crop may be made, if the executors deem that course to be beneficial to the estate. The lands are devoted to sale absolutely, but the sales are to be made on terms within the discretion of the executors, and the sales may be delayed for a length of time sufficient to make a crop on the lands, if, in the discretion of the executors, that course seems desirable. Nothing is inferable from the will, and all the parts of it, which suggests any other means of meeting the legacies, annuities, and charges made upon the estate than those arising from the sales of lands; and the sum remaining in the hands of the executors, whether from land sales or otherwise, after payment of debts, legacies, annuities and charges—the residuum of the entire estate now converted into money—is to be equally divided between his heirs named. Unless the lands are sold, the entire intent of the testator will fail.

Not only the clear intent (to be gathered from every part of the will) of the testator was that the lands were to be sold by the executors, but the fourteenth paragraph of the will expressly directs the sale of the lands, and only the questions of terms and credits in the making of the sales are left to the discretion of the executors. The lands are to be sold at all events, and the power to make sale is confided to the executors, *virtute officii*, and not in any other character. There is no personal trust confided to the executors *nominatim*, but merely that official one usual in the appointment of executors generally, and belonging to the office.

From this construction of the will, it follows that the power of sale in the premises survived to Jelks, administrator *de bonis non* with the will annexed, under the law as it has long existed in this state—the statutes in the codes of 1880, 1871, 1857, and Hutchinson, being substantially the same. See Hutch. Code, § 113, chap. 49; Code 1880, § 1984.

The fact that the testator, in the eighteenth paragraph of the will, grants to his executors or any two of them power and au-

thority to execute all the provisions of the instrument accord-ing to the true intent thereof, does not at all militate against the correctness of the opinion just pronounced. The power of the administrator, with the will annexed, is to be determined by the law applicable to the particular class of cases to which it may be found to belong. We have already said that in those cases in which certain powers are conferred upon executors, which are to be executed *virtute officii*, the power survives to the administrator with the will annexed, while in those cases where a relation of purely personal trust is created in executors *nominatim*, the trust cannot be executed by the administrator *cum testamento annexo*. The fact that the testator grants authority to the executors or any two of them to execute all the provisions of his will, is not potential at all in considering the question of the power of the administrator with the will annexed to execute the provisions of the will in those cases where the executors are empowered to act by virtue of their official character. The administrator with the will annexed, by virtue of his office, succeeds the former executors in the execution of the power conferred on them officially. He succeeds to the office, and succeeds to the powers of all the former incumbents of it.

These views fully meet the necessities of the case before us, and settle finally the rights of the parties. As we understand the record, from page 72 to 77, inclusive, these views also finally determine the litigation in thirty-eight or thirty-nine other suits now pending in the court below, and in which the same questions are involved.

We regret our inability to meet the expressed wishes of counsel on both sides, and consider and settle every question presented, in order to put an end to all litigation growing out of this same fruitful source. The facts in the two or three cases yet remaining open after this opinion are not before us, and we cannot undertake to deal with these cases in any manner.

*Affirmed.*